BELINDA GARCÍA APONTE, demandante y recurrida, v. HOSPI-TAL REGIONAL DE GUAYAMA, demandado y peticionario; CRI-SOBELA LÓPEZ ALICEA ET AL., demandantes y recurridos, v. ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y pe-ticionario; MARÍA T. LÓPEZ PÉREZ y OTROS, demandantes y recurridos, v. ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y peticionarios; WANDA CAMACHO AL-BINO y OTROS, demandantes y recurridos, v. ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y peticio-narios; LADY MARIAM DIPPINI CARRASQUILLO y OTROS, de-mandantes y recurridos, v. HOSPITAL DR. FEDERICO TRILLA y OTROS, demandados y peticionarios; DR. JOSÉ GORRÍN PE-RALTA, interventor.

| Números: CE-94-280 | Resueltos: 19 de agosto de 1997 |
| CE-94-380 | |
| CE-94-458 | |
| CE-94-430 | |

*Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol, Procurador General* y *Subprocurador General, Jacqueline Novas Debién, Subprocuradora General Inte-rina,* y *Sylvia A. Cancio Bigas, Procuradora General Auxi-liar,* abogados de la parte peticionaria; *Carlos I. Gorrín Peralta,* abogado de la parte interventora y recurrida; *Ed-gardo A. Vega López* y *José Juan Torres Escalera,* de *Jimé-nez, Graffam & Lausell,* abogados de la Universidad de Puerto Rico, peticionaria; *Nelsa López Colón* y *Julio Eduardo Torres, hijo,* abogados de Crisobela López, recu-rrida; *Raúl Dávila Rivera,* de *Bauzá & Dávila,* abogado de Belinda García Aponte, recurrida; *Josué A. Rodríguez Ri-vera,* abogado de Lady Miriam Dippini Carrasquillo, recu-rrida; *Rafael Torres Torres,* de *Torres Pérez Rivera,* abo-gado de María T. López y otros, recurridos; *José Ángel*

*Santini Bonilla*, abogado de Wanda Camacho Albino, recurrida.

832

— o —

Opinión de conformidad del Juez Asociado Señor Negrón García.

A falta de una disposición *expresa* de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental),[1] no podemos avalar una interpretación, cuyo efecto es descualificar automáticamente, sin justificación alguna, a prestigiosos

---

[1] Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1801 *et seq.*).

miembros de la profesión médica de testificar como peritos contra el Estado Libre Asociado en litigios judiciales sobre mala práctica médica por ser servidores públicos. "Máxime ante la dificultad y renuencia natural y tradicional prevaleciente entre la profesión médica de prestar testimonio pericial contra sus compañeros." *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 695 (1988), opinión disidente.

I

De entrada, aclaramos que la controversia en estos recursos no trata sobre lo favorable, sabio o válido de prohibir a los servidores públicos servir de peritos a una persona privada, contra el propio Gobierno, en litigios judiciales. *La controversia versa, únicamente, sobre si las disposiciones de la Ley de Ética Gubernamental, vigentes al momento en que surgen los hechos, prohibían esa conducta.*

La Ley de Ética Gubernamental persigue restituir y fortalecer la confianza de nuestro Pueblo en sus entidades gubernamentales y en sus servidores públicos. Para ello, previene y penaliza la conducta delictiva de aquellos funcionarios que, *en el desempeño de sus labores oficiales*, vulneren los principios básicos de una ética de excelencia.[2] Hemos reconocido el alto interés público de que ésta se encuentra revestida. *Besosa v. Corp. Azucarera de P.R.*, 137 D.P.R. 939 (1995), opinión disidente.

Específicamente, busca evitar la corrupción gubernamental a través del ingreso directo o indirecto del patrimonio del Pueblo, en abierta violación de las leyes y la indebida influencia de poder de los funcionarios públicos para obtener ventajas o privilegios no permitidos en ley. Para ello, el estatuto creó la Oficina de Ética Gubernamental y

---

[2] "...[A]lcanza a numerosos funcionarios electos y nombrados (legisladores, secretarios del gabinete, jueces y otros), y pretende prevenir y penalizar conducta antiética que traicione la confianza pública, mediante el principio de que sus ingresos y finanzas están sujetos al escrutinio público." (Énfasis suprimido.) *El Vocero de P.R. v. Nogueras I*, 138 D.P.R. 103, 133 (1995), opinión disidente.

un código de ética. Ésta instituye prohibiciones específicas relacionadas con que funcionarios o empleados brinden representación, a personas o entidades privadas, *conflictiva con sus funciones oficiales*. 3 L.P.R.A. sec. 1824. Todas sus vedas están dirigidas al desempeño de las obligaciones del funcionario como parte de su cargo gubernamental. *Ninguna proscribe el que un servidor público sirva como perito a una persona privada en litigios judiciales contra el propio Gobierno* cuando no interfiera con el cumplimiento de sus deberes y responsabilidades públicas.

Ahora bien, reconocemos que puede haber conflictos éticos que no afecten la función pública. En esos casos, la Oficina de Ética Gubernamental no tiene jurisdicción. Compete, entonces, a los organismos rectores de cada profesión.(³)

Por ello, ante el planteamiento de que un servidor público ha incurrido en conducta que conlleva un conflicto de interés o incompatibilidad de funciones, es menester, *primero*, determinar si la ley de ética regula la situación. De regularla, correspondería a la Oficina de Ética Gubernamental adjudicar. De no ser así, debe, *en segundo lugar*, acudirse al código de ética de la profesión del funcionario involucrado, y la Oficina de Ética Gubernamental pierde jurisdicción.(⁴)

---

(³) Por ejemplo, conforme al Canon 4 de Ética del Ingeniero y del Agrimensor, estos profesionales no pueden participar o representar un interés adversario, sin el consentimiento de las partes interesadas, en relación con un proyecto o asunto específico en el que hayan ganado un conocimiento especializado particular, en nombre de un patrono o cliente anterior. Por otro lado, el abogado no debe representar intereses encontrados. Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

(⁴) De esa manera, en *García O'Neill v. Cruz*, 126 D.P.R. 518 (1990), reconocimos que la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico no impide a un Asambleísta Municipal dedicarse a la práctica privada de la abogacía. Por ende, dijimos que correspondía a este Tribunal Supremo, no a la Oficina de Ética Gubernamental, atender los aspectos éticos bajo el Código de Ética del Abogado. Resolvimos, entonces, que el Canon 6 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, prohíbe, por incompatibilidad de funciones, el que un abogado represente a una persona privada en un caso de daños y perjuicios contra el Municipio del cual es Asambleísta Municipal.

## II

Aunque la Ley de Ética Gubernamental fue enmendada en 1994,([5]) ello no milita contra esta interpretación. Elaboremos.

En su informe al Senado sobre la pieza legislativa enmendatoria, la Comisión de Ética Gubernamental expresó que *"el Artículo 3.4 [3 L.P.R.A. sec. 1824] no contiene disposición alguna que prohíba a los funcionarios ... representar o asesorar personas o entidades privadas en casos o asuntos ante tribunales, organismos cuasi judiciales y agencias administrativas".* (Énfasis suplido.)([6])

Se *añadió* entonces al Art. 3.4, *supra:*

> (d) Ningún funcionario o empleado público a jornada completa podrá, *durante horas laborables,* representar, asesorar o *servir como perito* a personas o entidades privadas en litigios, vistas, audiencias públicas o cualquier asunto *ante tribunales de justicia,* organismos cuasi judiciales y agencias administrativas. (Énfasis suplido.)

Se colige, *primero,* que con anterioridad a la enmienda de 1994, la ley no establecía prohibición alguna para que los servidores públicos sirvieran como perito a una persona privada en litigios judiciales contra el E.L.A. *Segundo,* aun después de la enmienda, aquéllos a tiempo parcial, podrán hacerlo y, aquéllos a jornada completa, lo podrán hacer fuera de horas laborables. Esto, claro está, sin contravenir otras disposiciones de ley.

---

([5]) Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1802 *et seq.*). Aunque no aplica a los casos de autos, pues es posterior a los hechos, tanto su historial legislativo como sus disposiciones estatutarias ayudan, a manera de ilustración.

([6]) Informe de la Comisión de Ética Gubernamental del Senado de Puerto Rico sobre el P. del S. 50 de 23 de junio de 1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria, pág. 21.

## III

Estamos ante una actuación *ultra vires*. El poder de reglamentación delegado a las agencias tiene que ajustarse a las normas sustantivas comprendidas en el estatuto orgánico. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Columbia, Ed. Forum, 1993, pág. 119. Las agencias pueden aprobar reglamentos para delimitar o precisar sus facultades al amparo de la ley, *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 326 (1987); pueden "complementarla, pero no estar en conflicto con ésta, *Ex Parte Irizarry*, 66 D.P.R. 672 (1946)". *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980).

En consecuencia, el Reglamento de Ética Gubernamental no puede prohibir lo que, al palio de la ley, está permitido. *No procede invocar ni citar sus disposiciones reglamentarias para adjudicar esta controversia; la ley, según expusimos, no prohíbe el que servidores públicos sirvan de perito*, cuando ello no afecta la función pública.

## IV

A manera de epílogo, *queremos dejar meridianamente claro que servir como perito a una persona privada no constituye función propia y esencial de un profesor*. Precisamente, por no tener relación alguna con el cargo público que ocupan los *profesores de medicina* de la Universidad del Estado, es que conforme a la Ley de Ética Gubernamental, no hay conflicto de intereses o incompatibilidad de funciones.

*Es cuestionable, además, atribuirle al peritaje atributos inherentes a la libertad de cátedra que tiene el personal docente*. Ésta esencialmente consiste en el derecho "a enseñar con objetividad y honradez la materia que profesa ...". Art. 11, Sec. 11.1, Reg. Gen. U.P.R., ed. rev., 1990, pág. 7.

Véase *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 D.P.R. 335 (1994).

Por último, recordamos que *el ocupar el cargo de profesor no releva al funcionario de cumplir con las exigencias y prohibiciones de la Ley de Ética Gubernamental, así como obedecer los requerimientos del código de ética de la profesión a la que pertenece.*

A la luz del cuadro doctrinario expuesto, concluimos que, por no afectar las funciones del cargo de profesor que ocupan, la Ley de Ética Gubernamental no les impide servir como peritos en los recursos consolidados.[7]

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton.

¿Prohíbe la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental) que un profesor de la Universidad de Puerto Rico testifique como perito de la parte demandante en una reclamación judicial por impericia médica contra una entidad pública, aunque él no haya participado previamente en el asunto sobre el cual testificará? Confirmamos las sentencias recurridas por entender que la Ley de Ética Gubernamental no prohíbe esta conducta y que el Art. 18(C) del Reglamento de Ética Gubernamental Núm. 4827, Oficina de Ética Gubernamental, 23 de noviembre de 1992, es *ultra vires*. Sin embargo, no consideramos necesario pronunciarse sobre los aspectos constitucionales de la legislación cuando la controversia ante nos puede resolverse mediante interpretación estatutaria.

---

[7] Este dictamen, claro está, es sin menoscabo de que en su día, conforme al previo procedimiento que corresponda, el organismo regulador de la profesión médica pueda pasar juicio sobre si esta conducta viola alguna disposición del código que les rige.

# I

Las casos de epígrafe se deben examinar a la luz del propósito y la letra de la Ley de Ética Gubernamental, Ley Núm. 12 de 24 de junio de 1985, según enmendada, 3 L.P.R.A. sec. 1801 *et seq*. Este estatuto tiene el propósito de crear mecanismos efectivos para prevenir la corrupción gubernamental y penalizar a aquellos funcionarios y empleados públicos que, en el descargo de sus responsabilidades, violen los preceptos éticos de la ley y su reglamento. La ley impone una serie de deberes a los servidores públicos y establece ciertas prohibiciones generales y otras específicas. 3 L.P.R.A. secs. 1821–1826. También extiende algunas de sus prohibiciones y obligaciones a ex funcionarios públicos. 3 L.P.R.A. sec. 1827.

Para la fecha en que surgió la controversia de autos, el Art. 3.4(c) de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1824(c), prohibía que un empleado público representara o asesorara a otra persona en "casos o asuntos" que implicaran un conflicto de interés entre el Estado y dicha persona. Al respecto disponía:[1]

> (c) Ningún funcionario o empleado público podrá representar o de cualquier otra manera asesorar, directa o indirectamente, a persona privada alguna ante cualquier agencia ejecutiva a cambio de compensación o beneficio económico, en casos y asuntos relacionados con el Gobierno de Puerto Rico ni en casos o asuntos que envuelvan conflictos de intereses o de política pública entre el Gobierno y los intereses de dicha persona privada. 3 L.P.R.A. sec. 1824(c).

Inmediatamente después de esta prohibición, el estatuto define el término "asunto". El inciso (d) del Art. 3.4 (3 L.P.R.A. sec. 1824(d)) provee el lenguaje operativo para determinar si una situación específica cae bajo el ámbito de la prohibición legal. Específicamente dispone:

---

[1] Este artículo, junto a otros de la ley, fue objeto de enmienda en 1994. Véase Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1802 *et seq*.).

(d) Para los fines de esta sección y de la sec. 1827 de este título, el término "asunto" significa aquéllos en que el funcionario o empleado haya participado personal y sustancialmente y que ocurrieron mediante decisión, aprobación o desaprobación, recomendación o consejo, o investigación particular que involucre partes específicas. No incluye la intervención o participación del funcionario o empleado en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o casos específicos. 3 L.P.R.A. sec. 1824(d).

De esta disposición se desprende que el Art. 3.4(c), *supra*, solamente prohíbe la intervención de funcionarios o empleados que hayan tenido una previa participación personal y sustancial en el asunto sobre el cual gira su gestión actual. *Para que se active la prohibición se requiere que el empleado haya participado previa y personalmente en el asunto en cuestión.*

Es obvio que la legislación quiso prohibir el surgimiento de conflictos entre las obligaciones del empleado y sus actividades fuera de su empleo que sean incompatibles con el desempeño de su cargo. Sin embargo, esto no significa que se prohibió también cualquier otra actividad que no esté relacionada con sus obligaciones oficiales por el hecho de que ésta pueda confligir con otros intereses del Gobierno.

Además, como correctamente concluyó el Tribunal Superior (Hon. Berta Mainardi, J.) en una de las sentencias recurridas, "un análisis valorativo confirma que la Ley de Ética Gubernamental y su Reglamento sólo deben prohibir actividades que se relacionen con las funciones que los empleados públicos realizan en el desempeño de su cargo. ... [L]as actividades de los empleados públicos que no estén relacionadas con el desempeño de sus obligaciones no tienen por qué ser reguladas ni prohibidas [en este tipo de ley]". Petición de *certiorari*, Apéndice, pág. 16. Véase B. Nolan, *Public Interest, Private Income: Conflicts and Control Limits on the Outside Income of Government Officials*, 87 Nw. U.L. Rev. 57 (1992).

Cuando los tribunales de instancia emitieron las resoluciones recurridas, el texto del Art. 3.4(c), *supra*, solamente

prohibía el asesoramiento o representación de personas privadas por parte de servidores públicos ante *agencias ejecutivas*. Después de que esta Curia expidió los recursos de autos, se enmendó la Ley de Ética Gubernamental para extender la prohibición a las comparecencias ante los tribunales de justicia y para, específicamente, proscribir que los empleados públicos sirvan como peritos en "cualquier asunto" que se ventile judicialmente. Art. 6(d) de la Ley Núm. 150 de 22 de diciembre de 1994, Leyes de Puerto Rico, Parte 2, pág. 1313. De esta manera el Estado enmendó la ley para atemperarla a lo que mediante el Reglamento de Ética Gubernamental se había dispuesto en forma *ultra vires*.(²)

No obstante, después de dichas enmiendas el Art. 3.4, *supra*, contiene todavía, en el inciso redesignado como (e), el mismo texto que antes contenía la aclaración de que "[p]ara los fines de esta sección ... el término 'asunto' significa aquellos en que el funcionario o empleado haya participado personal y sustancialmente ...". 3 L.P.R.A. sec. 1824(e) (Sup. 1996). Además, el nuevo texto del Art. 3.4, *supra*, tiene el inciso (d), que es determinante en estos casos. Dicho inciso prohíbe a un servidor público "servir como perito ... en litigios, vistas, audiencias públicas o cualquier *asunto* ante tribunales de justicia ...". (Énfasis suplido.) 3 L.P.R.A. sec. 1824(d) (Sup. 1996). Dicho nuevo inciso (d), al igual que el (c), requiere que se trate de un asunto, según definido en el (e), "en que el funcionario o empleado *haya participado personal y sustancialmente ...*".

---

(²) En otras palabras, mientras el Procurador General sostenía en su comparecencia ante nos que el Art. 18(C) del Reglamento de Ética Gubernamental Núm. 4827, Oficina de Ética Gubernamental, 23 de noviembre de 1992, no se excedió en su prohibición al incluir las comparecencias en los tribunales, el Estado promovió legislación para ampliar el alcance de las prohibiciones e incluir lo que ante nos se alegaba que ya estaba cubierto. Esta conducta del Estado ante los tribunales del país merece nuestra más enérgica censura.

Aunque estas enmiendas fueron sustanciales, no por ello adviene académica la controversia ante nos. Antes y después de las enmiendas, la controversia en los distintos casos ante nos gira en torno a si se requiere, para que opere la prohibición reglamentaria y estatutaria, que el empleado o funcionario público haya previamente participado personal y sustancialmente en el caso o asunto ante los tribunales.

(Énfasis suplido.) 3 L.P.R.A. sec. 1824(e) (Sup. 1996). Obviamente, no es de aplicación la prohibición del Art. 3.4, según enmendado, *supra*, si no se configura el requisito de participación previa ordenado en el nuevo inciso (e).

Un examen del historial de las enmiendas realizadas en 1994 revela que la Asamblea Legislativa tenía la intención y sabía que lo prohibido en dicho precepto se refería a "asuntos" en que el funcionario hubiese participado previamente:

> También se enmienda el Inciso (c) para sustituir la "o" que le sigue a la palabra casos por una "y". Actualmente se puede interpretar que las palabras casos y asuntos tienen el mismo significado. *La palabra asuntos está definida en el propio Artículo 3.4 y comprende aquellos en que el funcionario o empleado público haya participado personal y sustancialmente* pero excluyendo la intervención en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o casos específicos. (Énfasis suplido.) Informe de la Comisión de Ética Gubernamental del Senado de Puerto Rico sobre el P. del S. 50 de 23 de junio de 1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria, pág. 21.

De lo anterior se desprende que el Art. 3.4(c) y (d) de la Ley de Ética Gubernamental, *supra*, y el Art. 18(C) del Reglamento de Ética Gubernamental, *supra*, no prohíben que un profesor de la Universidad de Puerto Rico testifique como perito en un caso o asunto ante los tribunales en que el Estado es parte, en aquellas instancias en que dicho catedrático ha participado personal y sustancialmente en el asunto sobre el cual testificará.

En ninguno de los casos ante nos se probó que los peritos José Gorrín Peralta y Glen Garayalde Cotroneo participaran previamente de manera personal y sustancial en el asunto sobre el cual testificarían. Tampoco se probó que sus gestiones como testigos periciales menoscabaran de alguna forma el cumplimiento con sus obligaciones catedráticas. Por ende, no proceden sus descalificaciones en los casos recurridos. A tenor con el texto de la Ley de Ética Gubernamental, no podemos impedir a las partes deman-

dantes el uso de sus respectivos testimonios en las reclamaciones por impericia médica contra el Estado.

Decidir lo contrario conllevaría privar a los tribunales del país y a muchos litigantes, en especial a aquellos económicamente menos afortunados, del peritaje de servidores públicos como los catedráticos aquí involucrados. Como acertadamente concluyó el foro de instancia en uno de los casos recurridos: "[c]errar las puertas a la alternativa de recursos que se han dedicado por vocación al servicio público porque ello violente una interpretación estirada de la Ley de Ética Gubernamental, no sirve a los mejores fines de la justicia". Petición de *certiorari*, Apéndice, pág. 18.

Por las razones expuestas anteriormente, estamos conforme con la sentencia emitida por este Tribunal.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Presidente Señor Andréu García.

Estoy conforme con la decisión de la mayoría de este Tribunal de confirmar las determinaciones de los tribunales de instancia en los casos de autos. De haberse adoptado la posición contraria, se hubiese rebasado el esquema regulatorio de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental), 3 L.P.R.A. sec. 1801 *et seq.*, que estaba vigente al momento en que ocurrieron los hechos de los casos de autos. Un examen cuidadoso de esta ley demuestra que en ella no se prohibía que un profesor del sistema universitario público sirviese de perito a terceras personas en un pleito contra el Gobierno, sobre todo cuando dicho profesor no tuvo previa participación en el asunto litigioso. Además, no se puede interpretar la Ley de Ética Gubernamental a base de una concepción errónea de las funciones y responsabilidades de los claustrales de la Universidad de

Puerto Rico y de su inherente vinculación con los procesos públicos, sin que se planteen graves problemas de inconstitucionalidad.(¹) Veamos.

## I

Un examen cuidadoso del historial y del texto de la Ley de Ética Gubernamental vigente al ocurrir los hechos de los casos de autos revela que no hay nada en dicho esquema legislativo que dé pie para deducir que las actuaciones de profesores de la Universidad de Puerto Rico en cuestión estaban prohibidas. Dichas actuaciones no estaban concretamente mencionadas en la ley ni se consideraron de modo alguno en los estudios y discusiones que precedieron su aprobación.

Sencillamente, no fue para conjurar las actuaciones en cuestión que se adoptó en el país el esquema jurídico sobre la ética gubernamental. El historial de la referida ley está repleto de expresiones legislativas que aluden a la necesidad "de restituir la honestidad en nuestro sistema de gobierno";(²) al compromiso "de evitar y descubrir la corrupción en todas las agencias del gobierno",(³) y al propósito de "prevenir el comportamiento delictuoso de funcionarios públicos" y atender "las circunstancias terribles de la corrupción gubernamental que han enturbiado nuestra gerencia

---

(¹) Sé que este Tribunal desde hace tiempo tiene establecida la *política judicial* de no dictaminar sobre la validez constitucional de una ley o reglamento si existen fundamentos de otra índole que permiten disponer del caso. *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958). Pero ello no es una barrera infranqueable que impida incluso anticipar, a modo de observación, los graves problemas de inconstitucionalidad que determinado curso de acción acarrearía, sobre todo en casos tan importantes como el de autos. Se evitan ominosos problemas futuros si se advierte a tiempo la probable invalidez de una acción cuya realización es claramente contemplable. Por ello, considero desafortunado que los compañeros de la mayoría no hayan acogido la postura decisional que les propusimos y que hayan optado, luego, por resolver este caso estrictamente sobre limitadas bases estatutarias. Me temo que volveremos a discutir los asuntos constitucionales en cuestión, ya que con una mera enmienda legislativa queda sin efecto lo que aquí ellos deciden.

(²) Debate en el Senado el 29 de mayo de 1985.

(³) Debate en la Cámara de Representantes el 31 de mayo de 1985.

pública".([4]) Las actuaciones de los profesores de la Universidad de Puerto Rico que se pretenden proscribir aquí no son "deshonestas" ni constituyen "comportamiento delictuoso" o de "corrupción". No tienen nada que ver realmente con el grave problema de depravación y descomposición moral que ha surgido en la administración pública en el país en las últimas décadas, que es lo que se busca remediar con el esquema de la Ley de Ética Gubernamental.

Los males concretos que se quieren combatir mediante la ley en cuestión son harto conocidos en Puerto Rico. Incluyen cosas tales como las siguientes:

(1) el uso de fondos públicos por funcionarios gubernamentales para fines políticos o personales, o para otros propósitos no autorizados por ley;

(2) recibir pago u otras prebendas a cambio de otorgar algún permiso, licencia o franquicia gubernamental;

(3) favorecer a parientes, antiguos socios o correligionarios con lucrativos contratos o concesiones gubernamentales;

(4) utilizar información privilegiada para adelantar algún negocio privado propio o de allegados;

(5) extender nombramientos o dar empleo público a personas que no cualifican, que han obtenido tal nombramiento o empleo por motivos impropios.

Son actos ilícitos o inmorales como los anteriores —que delatan la venta de influencias, el fraude y la corrupción— lo que se pretende conjurar mediante la Ley de Ética Gubernamental; no un servicio legítimo, de valor social, que los profesores de la Universidad de Puerto Rico puedan rendir a personas privadas que tienen reclamos frente al Estado. No puede interpretarse dicha ley para incluir este servicio sin rebasar por mucho sus propósitos y objetivos.

Más aún, la Ley de Ética Gubernamental vigente al momento de ocurrir los hechos de los casos de autos, no pro-

---

([4]) Informe conjunto de varias comisiones del Senado en torno al P. del S. 292 de mayo de 1985.

hibía la intervención como peritos judiciales de profesores de la Universidad de Puerto Rico, que se ha impugnado concretamente aquí. En el momento en que los foros de instancia emitieron las decisiones aquí recurridas, el inciso (c) del Art. 3.4 de la Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1824(c)) también conocida como la Ley de Ética Gubernamental, decía al respecto:

(c) *Ningún funcionario o empleado público podrá representar o de cualquier otra manera asesorar, directa o indirectamente, a persona privada alguna ante cualquier agencia ejecutiva* a cambio de compensación o beneficio económico, en casos o asuntos relacionados con el Gobierno de Puerto Rico ni en casos o asuntos que envuelvan conflictos de intereses o de política pública entre el Gobierno y los intereses de dicha persona privada. (Énfasis suplido.)

Lo que dicho artículo prohibía era que se representara o asesorara a una persona privada *ante las agencias ejecutivas.* No se decía nada sobre su participación en *procesos judiciales.* La prohibición aludida era acorde con la finalidad que permeaba la Ley de Ética Gubernamental, de proscribir que un funcionario gubernamental utilizase su cargo o su disuación para influir en una decisión gubernamental a favor de alguna persona.

Esta ley fue enmendada luego de ocurridos los hechos de los casos de autos, pero la disposición aplicable a éstos era la que estaba vigente cuando se emitieron las decisiones recurridas. Como hemos indicado ya, esa versión de la Ley de Ética Gubernamental no regulaba la participación de profesores universitarios en procesos judiciales. Sin embargo, debe señalarse también que es dudoso que alguna enmienda posterior de dicha ley pueda prohibir válidamente el referido quehacer de un claustral de la universidad del Estado. Cualquier pretensión de limitar las tradicionales funciones de la cátedra pública conllevaría obstáculos constitucionales muy difíciles de salvar. Examinemos por qué ello es así.

## II

Aunque todos los casos en cuestión aquí presentan una misma situación —sobre un catedrático del Recinto de Ciencias Médicas de la Universidad de Puerto Rico que actúa como perito en un pleito de impericia instado contra el Estado— un dictamen acorde con lo planteado por el Procurador General inevitablemente sería extensivo a otras situaciones análogas que ocurren con frecuencia. Es decir, un dictamen como el que interesa el peticionario, que prohibiría la participación de profesores de la Universidad de Puerto Rico en determinados casos o asuntos, por sus propios términos, sería indudablemente aplicable, no sólo al profesor de medicina que sirve de perito en un pleito de impericia contra el Estado, sino además, digamos:

(1) al profesor de derecho que representa a un acusado indigente en su juicio penal;

(2) al profesor de psicología que asesora a la madre de un menor que interesa recobrar su custodia del Estado;

(3) al profesor de ingeniería que colabora con algún demandante que le imputa negligencia al Estado en la construcción de un edificio público, que ocasionó un accidente al que reclama;

(4) al profesor que sirve de perito científico de unos vecinos que se oponen al desarrollo de algún proyecto público, por razones ambientales o por falta de la debida planificación;

(5) al profesor que representa a cualquier agrupación cívica o grupo de ciudadanos que impugna la validez de alguna ley, reglamento u ordenanza pública;

(6) al profesor de derecho que representa a niños con impedimentos en pleitos contra el Estado por no atender su derecho a servicios especiales, y

(7) al profesor de pedagogía que sirve de perito en tales casos.

Todas las situaciones anteriores, y otras similares, acontecen de ordinario en los procesos públicos del país, incluso los judiciales. Las referidas actuaciones de claustrales de

la Universidad de Puerto Rico, realizadas muchas veces ad honorem, forman parte integral del entramado académico. Con frecuencia, el profesor universitario participa en actividades como las aludidas para adquirir experiencias prácticas que enriquecen su labor en el salón de clases. Otras veces, su intervención en los procesos públicos ocurre como parte cabal de alguna investigación empírica, dirigida a ensanchar el caudal de conocimientos sobre cómo en efecto funcionan las instituciones gubernamentales. En otras ocasiones, la intervención aludida es el medio eficaz de dar a conocer, o de poner a prueba, alguna nueva hipótesis o teoría en el campo de especialidad del profesor. Con frecuencia también, la participación claustral en los procesos públicos es un modo de ofrecer un servicio esencial a sectores de la comunidad que no tienen otra manera de obtenerlo, que el universitario rinde no sólo en descargo de la responsabilidad pública que le impone su particular profesión sino, además, como ejemplo aleccionador a sus estudiantes, precisamente sobre los valores y deberes profesionales que debe impartirles. Finalmente, la intervención claustral en los procesos públicos responde muchas veces a la primordial función universitaria de examinar críticamente la labor gubernamental, tan importante en una sociedad democrática. Parte de ello incluye cuestionar la calidad de los servicios que ofrecen las entidades gubernamentales.

*Todas las actuaciones claustrales aludidas constituyen funciones propias y esenciales del quehacer universitario.* Sobre todo en la Universidad de Puerto Rico, forman parte integrante de la libertad y de la responsabilidad académica. Véanse: *Coss y U.P.R. v. C.E.E.*, 137 D.P.R. 877 (1995), opinión concurrente del Juez Asociado Señor Hernández Denton; *C.E.S. U.P.R. v. Gobernador*, 137 D.P.R. 83 (1994), opinión concurrente del Juez Presidente Señor Andréu García; *Consejo Educación Superior v. U.I.A.*, 120 D.P.R. 224, 234–235 (1987). Ello es tanto así que al momento de evaluar a los profesores para ascensos en rango y permanencia, se toma muy en cuenta precisamente la ca-

lidad y frecuencia de la participación del profesor en los procesos públicos y su servicio a la comunidad.

Si el profesor no puede desempeñar las funciones mencionadas libremente, entonces la Universidad de Puerto Rico no puede cumplir adecuadamente la misión que le asigna su ley orgánica. Dispone la Ley de la Universidad de Puerto Rico lo siguiente, 18 L.P.R.A. sec. 601:

*Sec. 601. Objetivos de la Universidad de Puerto Rico*
(a) La Universidad, como órgano de la educación superior, *por su obligación de servicio al pueblo de Puerto Rico y por su debida fidelidad a los ideales de una sociedad integralmente democrática*, tiene como misión esencial alcanzar los siguientes objetivos, con los cuales es consustancial la más amplia libertad de cátedra y de investigación científica:
(1) *Transmitir e incrementar el saber* por medio de las ciencias y de las artes, *poniéndolo al servicio de la comunidad a través de la acción de sus profesores*, investigadores, estudiantes y egresados.
(2) Contribuir al cultivo y disfrute de los valores éticos y estéticos de la cultura.
(b) En el cumplimiento leal de su misión, la Universidad deberá:
(1) Cultivar el amor al conocimiento como vía de libertad a través de la búsqueda y *discusión de la verdad*, en actitud de respeto al diálogo creador.
(2) Conservar, enriquecer y difundir los valores culturales del pueblo puertorriqueño y fortalecer la conciencia de su unidad *en la común empresa de resolver democráticamente sus problemas.*
(3) *Procurar la formación plena del estudiante, en vista a su responsabilidad como servidor de la comunidad.*
(4) Desarrollar a plenitud la riqueza intelectual y espiritual latente en nuestro pueblo, a fin de que los *valores de la inteligencia y del espíritu de las personalidades excepcionales que surgen de todos sus sectores sociales, especialmente los menos favorecidos en recursos económicos, puedan ponerse al servicio de la sociedad puertorriqueña.*
(5) *Colaborar* con otros organismos, dentro de las esferas de acción que le son propias, *en el estudio de los problemas de Puerto Rico.*
(6) Tener presente que por su carácter de Universidad y por su identificación con los ideales de vida de Puerto Rico, *ella está esencialmente vinculada a los valores e intereses de toda comunidad democrática.* (Énfasis suplido.)

Estos objetivos de la Universidad de Puerto Rico son responsabilidad de toda la comunidad universitaria, pero especialmente de los profesores, quienes constituyen el elemento vital más permanente y activo de la institución. Siendo ello así, no puede interpretarse el importante esquema de la Ley de Ética Gubernamental para imponerle graves trabas a la Universidad de Puerto Rico en el desempeño de su misión esencial. No puede ser que dicha ley haya sido aprobada para coartar a la Universidad de Puerto Rico en la realización de aspectos esenciales de su quehacer institucional.

## III

Es menester resaltar que las funciones que realizan los profesores de la Universidad de Puerto Rico, al intervenir de diversas formas en los procesos gubernamentales, no sólo están protegidas por la ley universitaria y por la libertad académica, sino que con frecuencia responden a otros derechos constitucionales o a importantes intereses públicos, que pueden quedar desatendidos si no se permite la intervención claustral. Así, pues, el profesor de derecho que defiende a un acusado en su juicio penal actúa en función del fundamental derecho constitucional que éste tiene a la representación legal.

Del mismo modo, el perito médico que testifica en un juicio civil de daños y perjuicios responde al vital interés público de que las determinaciones judiciales se adjudiquen conforme a la verdad de los hechos. Véanse: Regla 2 de Evidencia, 32 L.P.R.A. Ap. IV; *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985); *Ades v. Zalman*, 115 D.P.R. 514 (1984); *Pueblo v. Ríos Nogueras*, 111 D.P.R. 647 (1981); *J.R.T. v. Aut. de Comunicaciones*, 110 D.P.R. 879 (1981). En uno de los casos de autos, el tribunal de instancia expresó dicho interés público elocuentemente:

El Tribunal toma´ conocimiento judicial de las dificultades que enfrentan los demandantes en casos de impericia médica,

especialmente en casos relacionados con la obstetricia y ginecología, para conseguir [perito] médico adecuado que les permita presentar sus reclamaciones judiciales. Cerrar las puertas a la alternativa de recursos que se han dedicado por vocación al servicio público, porque ello violente una interpretación estirada de la Ley de Etica Gubernamental, no sirve a los mejores fines de la justicia. No sólo priva a muchos litigantes, especialmente los económicamente menos afortunados, de la oportunidad de ventilar sus reclamaciones contra el Estado con prueba mínima que les permita presentar casos prima facie, sino que priva al Poder Judicial de la orientación que estos servidores públicos pueden ofrecer en asuntos técnicos como la impericia médica, y otros análogos en los que la orientación pericial es indispensable para poder administrar justicia. Si el servicio pericial no afecta sus obligaciones como servidores públicos, ni han intervenido previamente en los hechos que dan origen a la reclamación, no hay interés público alguno que justifique su descalificación como testigos periciales.

En vista de lo anterior, no puede interpretarse el esquema de la Ley de Ética Gubernamental, de nuevo, tan desvariadamente, como nos solicita el Estado, para obstaculizar la buena marcha de los procedimientos judiciales. No puede ser que dicha ley haya sido aprobada para privar a los tribunales de medios vitales para realizar su ingente función.

## IV

Es menester destacar también que la Ley de Ética Gubernamental no puede interpretarse de modo alguno que implique un menoscabo del fundamental derecho de toda persona de criticar a los funcionarios públicos y de pedir al Gobierno la reparación de agravios. Art. II, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1.

Nuestro sistema democrático se erige sobre las premisas de que la voluntad del pueblo es la fuente del poder público, que el orden político está subordinado a los derechos de las personas y que el ciudadano tiene asegurada la libre participación en las decisiones colectivas. Así se declara solemnemente en el Preámbulo de nuestra Constitución.

Como parte del entramado de nuestro sistema democrático, las personas tienen amplios derechos frente al Estado, entre los que se incluyen: el cuestionar las decisiones gubernamentales por todos los medios lícitos, el reclamar determinados comportamientos de los funcionarios públicos y el pedir conforme a ley indemnización por daños que el Estado les haya ocasionado. *Estos derechos de expresión presuponen y aparejan los medios razonablemente necesarios para que puedan ejercitarse.* Véase *Pueblo v. Arandes de Celis*, 120 D.P.R. 530 (1988). No es permisible bajo nuestro régimen constitucional que, a título de salvaguardar la ética gubernamental, se impongan serias cortapisas a los medios necesarios para cuestionar las decisiones de funcionarios públicos o para exigir la reparación de agravios. Tales derechos, que son de la mayor jerarquía constitucional, quedarían socavados en la práctica si el Estado pudiese coartar los medios razonablemente necesarios para ejercitarlos.

Dicho en palabras más sencillas, en nuestro país, a la víctima de un acto gubernamental ilícito o negligente, no puede impedírsele que tenga a su alcance los medios necesarios para reclamar alguna indemnización al Estado sin socavar, a la vez, el derecho constitucional a pedir la reparación de agravios. Por ello, no puede impedirse que un profesor de la Universidad de Puerto Rico colabore con la persona que le reclama al Gobierno, sólo porque la acción de esa persona sea *contra* el Gobierno. Impedir tal colaboración por esa razón es propio de *regímenes autoritarios* en los cuales el Estado tiene carácter corporativo o intereses propios que rebasan los del pueblo; pero no cabe en un sistema democrático, en el cual el Estado recibe sus poderes del pueblo y sus únicos intereses son los del poderdante y los del bien común. En resumen, pues, la pretensión de que un profesor de la Universidad de Puerto Rico no puede auxiliar a un ciudadano, cuando éste le reclama al Estado, sólo porque la acción del ciudadano es contra el Gobierno, es profundamente antidemocrática y atenta contra fundamentales derechos de la persona.

## V

Finalmente, debe hacerse un señalamiento adicional sobre la cuestión de la *apariencia* de conflicto de intereses. Gran parte de lo alegado por la parte peticionaria gira en torno a la supuesta apariencia de conducta impropia de los recurridos en el caso de autos y el supuesto mandato del *Reglamento* de Ética Gubernamental de evitar que parezca que la conducta aludida provoca un conflicto "con los intereses del gobierno".

No cabe duda de que es legítima la preocupación por disipar incluso la apariencia de conducta impropia en el servicio público. Pero este interés tiene límites evidentes. En primer lugar, lo principal en el esquema vigente sobre ética gubernamental es evitar y penalizar *la conducta en sí* que constituye corrupción o conflicto de intereses.[5] Lo de la apariencia de conducta impropia es accesorio a la finalidad principal y no debe confundirse con ésta ni suplantar a esa finalidad principal en los esfuerzos de la Oficina de Ética Gubernamental o del Ministerio Público por implantar el referido esquema legislativo.

En segundo lugar, no es cualquier "apariencia" de conducta impropia lo que es sancionable. Sobre todo en un país como es el nuestro actualmente —tan dado a los dimes y diretes respecto a la cosa pública— no deben ponerse en marcha los procedimientos correspondientes sobre ética gubernamental cuando meramente se alegue la apariencia de conducta impropia. Ello debe hacerse sólo cuando exista sustantivamente algo más que una mera alegación; es decir, cuando existan bases fundadas para ésta o serias dudas en cuanto a la propiedad de la gestión pública en cuestión.

---

[5] La Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico define el concepto "conflicto de intereses" como: "aquella situación en la que el interés personal o económico del servidor público o de personas relacionadas con éste, está o puede razonablemente estar en pugna con el interés público." 3 L.P.R.A. sec. 1802(s).

Más importante aún, el interés por evitar hasta la apariencia de conducta impropia no es de modo alguno suficiente para justificar la imposición de sanciones, cuando el mismo se contrapone a derechos fundamentales o intereses estatales preeminentes, como ocurre en el caso de autos. Aquí, la supuesta apariencia de conducta impropia de los profesores de la Universidad de Puerto Rico no puede de modo alguno prevalecer frente a la libertad académica de dichos profesores, frente al alto interés público en la buena marcha de los procedimientos judiciales y frente al derecho a la libre expresión y a pedir la reparación de agravios de las personas auxiliadas por los profesores.

Lo anterior es particularmente cierto en un caso como el de autos, en el cual sólo tenemos ante nos la *conjetura* de que la actuación de los referidos profesores crea una apariencia de conflicto de intereses. Mucho más razonable es la apreciación de que lo que realmente crea desconfianza pública es el intento de impedir la actuación de los profesores en cuestión. La pretensión de amordazar a los que más saben y de obligar a los profesores de la Universidad de Puerto Rico a una conspiración de silencio con los que han cometido desmadres públicos, desmerece y desacredita gravemente la democracia puertorriqueña. Atenta contra la apertura que debe caracterizar al Gobierno y debilita así la confianza del pueblo en las instituciones públicas. Si algo, es la suspicacia que genera la conducta antidemocrática lo que debe preocuparnos en este caso.

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

A través de los recursos consolidados de epígrafe, se nos ha planteado por primera vez la controversia de si el hecho de que un médico que se desempeña como catedrático en el Recinto de Ciencias Médicas de la Universidad de Puerto

Rico actúe como perito de la parte demandante en una reclamación judicial de daños y perjuicios por alegada impericia médica instada contra el Estado, o la Universidad de Puerto Rico, constituye una de las actividades proscritas a los servidores públicos por las disposiciones de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental) y el Reglamento de Ética Gubernamental aprobado en virtud de dicha ley.

Luego de un análisis detenido de dicha ley y su correspondiente reglamento, y en ánimo de salvaguardar los valores que subyacen en su espíritu y sus propósitos, resolveríamos que la participación de dichos servidores públicos como peritos de las partes demandantes presentaría, o al menos aparentaría, un conflicto de intereses que requiere que éstos se abstengan de actuar como tales. En consecuencia, revocaríamos las resoluciones recurridas y decretaríamos la descalificación de los referidos facultativos médicos como testigos periciales. Por no ser ese el resultado de la sentencia dictada hoy por este Tribunal, disentimos.

Los hechos pertinentes a los diferentes recursos se exponen a continuación.

I

A. *García Aponte v. Hospital Regional de Guayama, CE-94-280; López Alicea y otros v. E.L.A. y otros, CE-94-280; Camacho Albino y otros v. E.L.A. y otros, CE-94-458*

En estos casos las partes demandantes presentaron contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.), entre otros, diferentes demandas de daños y perjuicios por alegadas actuaciones u omisiones culposas o negligentes en relación con servicios médicos prestados en diversas instituciones hospitalarias del Estado.

Trabadas las respectivas controversias, los demandantes anunciaron como perito al Dr. José Gorrín Peralta, quien se desempeñaba, a su vez, como Decano Asociado de

la Escuela de Salud Pública del Recinto de Ciencias Médicas de la Universidad de Puerto Rico. El E.L.A. se opuso a la presentación de dicho perito por los demandantes y solicitó que se ordenara su descalificación. Para sostener su contención alegó, en síntesis, que siendo el Estado una parte demandada, y en vista de que el doctor Gorrín Peralta se desempeña como servidor público, a tenor con las disposiciones de la Ley de Ética Gubernamental y el correspondiente reglamento, existía un conflicto de intereses que le impedía servir como perito en los pleitos instados.

Por su parte, el doctor Gorrín Peralta solicitó que se le permitiera intervenir en cada uno de los pleitos, a los efectos de representar sus intereses en cuanto al incidente relacionado con su descalificación. De esta manera, se opuso a los planteamientos presentados por el E.L.A.

Así las cosas, el tribunal de instancia emitió las correspondientes resoluciones, declarando no ha lugar las solicitudes de descalificación presentadas por el E.L.A. Reiteradamente, concluyó dicho foro que los hechos que daban base a los casos de autos y las gestiones que realizaría el doctor Gorrín Peralta como testigo pericial en éstos, en nada se relacionaban con el desempeño de sus obligaciones como Decano Asociado de la Universidad de Puerto Rico.(1)

B.  *Lady Mariam Dippini Carrasquillo y otros v. Hospital Dr. Federico Trilla y otros, CE-94-430*

El 6 de agosto de 1991 la parte demandante presentó una demanda por daños y perjuicios alegando mala práctica de la medicina por parte de los facultativos del Hospital Dr. Federico Trilla. En dicha demanda se incluyó como parte demandada, entre otros, a la Universidad de Puerto

---

(1) Véanse: Resolución emitida el 11 de enero de 1994 por el entonces Tribunal Superior, Sala de Guayama (Hon. Dante Amadís Rodríguez Sosa, J.), en el caso *García Aponte v. Hospital Regional de Guayama*; Resolución emitida el 17 de marzo de 1994 por el entonces Tribunal Superior, Sala de Bayamón (Hon. Berta Mainardi, J.), en el caso *López Alicea y otros v. E.L.A. y otros*; y Resolución emitida el 17 de mayo de 1994 por el entonces Tribunal Superior, Sala de Aibonito (Hon. Bruno Cortés Trigo, J.), en el caso *Camacho Albino y otros v. E.L.A. y otros.*

Rico, por ser esta institución el patrono de uno de los médicos codemandados.

Luego de varios trámites procesales, la parte demandante anunció como perito al doctor Gorrín Peralta. La Universidad de Puerto Rico se opuso y solicitó la descalificación de dicho perito también amparándose en las disposiciones de la Ley de Ética Gubernamental y su correspondiente reglamento. Por su parte, el doctor Gorrín Peralta presentó una moción de intervención oponiéndose a la solicitud de la Universidad.

El 13 de abril de 1994, el entonces Tribunal Superior, Sala de Carolina (Hon. Carmen Rita Vélez Borrás, J.), emitió una resolución para ordenar la descalificación solicitada. Sostuvo dicho foro que "un empleado o funcionario público que —a diferencia de un profesor o investigador docente— ocupe el cargo de Decano o Decano Asociado en la Escuela de Salud Pública del Recinto de Ciencias Médicas de la Universidad de Puerto Rico parece estar en conflicto sustancial con los intereses de la agencia ejecutiva para la cual trabaja si se dedica a la actividad profesional de prestar testimonio pericial, luego de ser contratado para ello por la parte adversa a la Universidad de Puerto Rico, en una reclamación judicial de daños y perjuicios alegadamente causados por los empleados o agentes de la referida institución pública". Apéndice, pág. 000168.

No obstante, el 23 de mayo de 1994, a solicitud de la parte demandante, el referido foro emitió una resolución nuevamente, esta vez permitiendo la presentación del doctor Gorrín Peralta como perito. Ello en vista de que dicho perito había renunciado a su cargo como Decano Asociado para Asuntos Académicos de la Escuela Graduada de Salud Pública, fungiendo únicamente como profesor en dicha institución.

C.  *María T. López Pérez y otros v. E.L.A., CE-94-380*

El 2 de febrero de 1990, los demandantes presentaron una demanda por daños y perjuicios por alegada impericia

médica contra el E.L.A. En ella alegaron negligencia de los empleados del Centro de Diagnóstico y Tratamiento de Cayey y del Hospital de Área de Cayey. Posteriormente, los demandantes anunciaron que su prueba pericial consistiría en el testimonio del Dr. Glen Garayalde Cotroneo, quien en ese momento se desempeñaba como Profesor Asociado del Recinto de Ciencias Médicas de la Universidad de Puerto Rico.

Por los mismos fundamentos que en los casos antes aludidos, el Estado se opuso y solicitó que se ordenara a la parte demandante prescindir de los servicios de peritaje de dicho facultativo. No obstante, el entonces Tribunal Superior, Sala de Guayama (Hon. Dante Amadís Rodríguez Sosa, J.), denegó la solicitud del E.L.A. tras concluir que la gestión pericial del doctor Garayalde Cotroneo nada tenía que ver con las funciones de éste como catedrático.

Inconformes con las resoluciones dictadas en los casos antes aludidos, tanto el E.L.A. como la Universidad de Puerto Rico interpusieron ante nos las correspondientes peticiones de *certiorari*. A través de éstas imputaron a los foros de instancia el haber errado al resolver que no viola la Ley de Ética Gubernamental o su correspondiente reglamento, el hecho de que un médico empleado como profesor por la Universidad de Puerto Rico sirva como perito de la parte demandante en un pleito contra el Estado o la dependencia gubernamental para la cual labora.

En ánimo de revisar las resoluciones recurridas, expedimos auto de *certiorari* y procedimos a consolidar los recursos.

II

Con el propósito de promover y preservar la integridad de los funcionarios e instituciones del Estado y a los fines de restaurar la confianza del pueblo en su gobierno y sus servidores públicos, el 24 de julio de 1985 la Legislatura aprobó la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1801 *et seq.* Para ello, a través de dicha legislación, el Es-

tado no sólo ha pretendido penalizar aquel comportamiento de sus funcionarios o empleados públicos que vulnere los principios básicos de una ética de excelencia o genere conflictos de intereses en la gestión pública, sino que también ha procurado establecer medidas eficaces en aras de prevenir y desalentar tal comportamiento.

Así se desprende de la Exposición de Motivos de la Ley Núm. 12 de 24 de julio de 1985, Leyes de Puerto Rico, págs. 708-709, en cuanto dispone:

> Nuestro pueblo creció históricamente con una ejemplar tradición cultural y una moralidad de corrección y de excelencia. Como pueblo, como personas y, a[ú]n más, como funcionarios públicos, no podemos alejarnos de esa orientación.
>
> El Estado Libre Asociado de Puerto Rico, como cuerpo político, está comprometido con una responsabilidad moral y con una responsabilidad ética en el sentido de obrar de acuerdo a unas normas y principios que rigen la conducta del buen vivir de su gente. Esa responsabilidad ética obliga a un continuo examen del comportamiento social y público de sus ciudadanos.
>
> En todo momento, tiene el Estado que garantizar el respeto al derecho y la obediencia a la ley. Esta misión le es fundamental especialmente cuando se trata de la conducta de aquellos funcionarios públicos que lo representan como servidores.
>
> Hay ocasiones en que, por desventura, surgen unas acciones improcedentes por parte de algunos funcionarios que, al incurrir en claras faltas a las normas de ética, ponen en riesgo la estabilidad del soporte moral del Estado. Es intolerable que existan funcionarios públicos en representación de la administración del Gobierno que puedan lucrarse del patrimonio del pueblo. Los conflictos de intereses, especialmente financieros, en abierta violación a las leyes son también intolerables.
>
> Para restaurar la confianza del pueblo en su Gobierno y en sus funcionarios públicos, cuando muchos de ellos han rebasado el nivel de lo tolerable, es preciso adoptar nuevas medidas legislativas que sean eficaces para prevenir y para penalizar el comportamiento delictivo de aquellos funcionarios que, en el desempeño de sus labores gubernamentales, vulneren los principios básicos de una ética de excelencia.
>
> En vista de estas consideraciones, entendemos que la aprobación de un Código de Etica para los funcionarios y empleados de la Rama Ejecutiva y la creación en esta ley de la Oficina de Etica Gubernamental es una medida cuya aprobación es de trascendental importancia.

Como parte del andamiaje gubernamental para adelan-

tar directamente tan importantes y laudables intereses públicos, la Ley Núm. 12, *supra*, estableció, entre otros, un código de ética dirigido a reglamentar la conducta de los funcionarios y empleados de la Rama Ejecutiva del Estado Libre Asociado, incluso sus corporaciones públicas y las agencias que estén bajo el control de dicha Rama, sus municipios, corporaciones y consorcios municipales. 3 L.P.R.A. sec. 1821.

Se creó, además, la Oficina de Ética Gubernamental, la cual tiene a su cargo la responsabilidad de velar, incentivar y promover que se cumplan estrictamente las disposiciones aprobadas. 3 L.P.R.A. sec. 1811.[2] Esta oficina es dirigida por un director ejecutivo,[3] quien al amparo del Art. 2.4 de la ley, 3 L.P.R.A. sec. 1814, tiene, entre otras, las facultades y los deberes indispensables siguientes para llevar a cabo la encomienda de dicha entidad gubernamental:

(a) *Promover y formular políticas y programas de conducta ética y moral* para los servidores públicos dirigidos a la consecución de los siguientes objetivos:

(1) El establecimiento de criterios de excelencia, integridad personal, honestidad, responsabilidad y veracidad, en las gestiones públicas para inspirar, fomentar y *restituir la confianza de los ciudadanos en las instituciones gubernamentales.*

(2) El compromiso por parte de todos los servidores públicos de que los *intereses personales no sustituirán los intereses públicos* ....

(b) Interpretar, aplicar y hacer cumplir las disposiciones de este Capítulo y las reglas y reglamentos que establecen determinadas prohibiciones respecto a la conducta de ciertos funcionarios y empleados públicos o que rigen las cuestiones de ética, de *conflicto de intereses* y de radicación de informes financieros.

...

(h) *Promulgar los reglamentos que sean necesarios y convenientes para cumplir con los propósitos de esa medida ....* (Énfasis suplido.)

De la disposición antes transcrita se puede colegir cla-

---

[2] Véase, además, el Informe Conjunto al Senado de Puerto Rico de las Comisiones de Asuntos del Ciudadano y Etica Gubernamental, de lo Jurídico, de Gobierno Estatal y de Hacienda, mayo de 1985.

[3] 3 L.P.R.A. sec. 1812.

ramente que la Asamblea Legislativa delegó a la Oficina de Ética Gubernamental, a través de su Director Ejecutivo, amplias facultades para la formulación dinámica de reglas que aseguren la consecución de los fines que persigue la legislación en controversia. Delegación que resulta adecuada, en vista de que la propia ley, aunque no establece normas detalladas y minuciosas, dispone pautas suficientes que sirven de guía, dirigiendo y limitando el uso del poder conferido.[4]

Fue precisamente dentro del ámbito de tales poderes y facultades que el 23 de noviembre de 1992 quedó promulgado el Reglamento de Ética Gubernamental, cuyo propósito se describe expresamente en su Art. 2 de la siguiente manera:

> *Es esencial que los funcionarios y empleados del servicio público mantengan principios del más alto grado de honestidad, integridad, imparcialidad y conducta para garantizar el debido funcionamiento de las instituciones gubernamentales y conservar la confianza de los ciudadanos en su gobierno.* Evitar una conducta impropia y conflictos de intereses por parte de los servidores públicos es indispensable para mantener estos principios. Por consiguiente, este Reglamento tiene el *propósito de establecer normas de conducta ética* aplicables a todos los funcionarios y empleados de la Rama Ejecutiva del Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo las corporaciones públicas, los municipios y las agencias bajo la jurisdicción de dicha Rama y establecer, además, ciertas normas para las actuaciones de los ex-servidores públicos de las tres ramas del Gobierno. (Énfasis suplido.) Art. 2, Reglamento de Ética Gubernamental Núm. 4827, Oficina de Ética Gubernamental, 23 de noviembre de 1992, pág. 1.

Ahora bien, cumpliendo con el propósito señalado, el cual indubitadamente resulta acorde con el principio cardinal de la Ley Núm. 12, *supra*, el Art. 13 del Reglamento de Ética Gubernamental, *supra*, proscribe expresamente ciertas "actividades incompatibles con el empleo" de los servidores públicos. En lo que respecta a los casos que nos

---

[4] *Cf. López v. Junta Planificación*, 80 D.P.R. 646, 661 (1958).

ocupan, dicho artículo, en su inciso (C), coloca dentro de su prohibición directa las actividades siguientes:

(C) *Ningún funcionario o empleado público* aceptará otro empleo, *ni se dedicará a cualquier actividad comercial, profesional o de otra naturaleza*, en las siguientes circunstancias:
1) Cuando *esté o parezca estar en conflicto sustancial con los intereses de la agencia ejecutiva para la cual trabaja o con los intereses del Gobierno.*
2) Cuando interfiera o razonablemente se pueda esperar que influya en el desempeño de sus funciones oficiales.
3) Cuando le impida prestar una jornada completa de trabajo a la agencia.
4) Cuando traiga descrédito a la agencia o al Gobierno. (Énfasis suplido.) Art. 13 del Reglamento de Ética Gubernamental, *supra*, pág. 14.

Como podrá observarse, con el precepto invocado se pretende evitar incluso la *apariencia* o *sospecha* de conducta impropia y situaciones conflictivas. Tal pretensión resulta lógica y completamente válida, si se desea fomentar y preservar la clara y contundente política pública del Estado de restablecer la confianza de nuestra ciudadanía en los funcionarios o empleados públicos y en el servicio gubernamental.

Sobre el particular, debemos señalar que aún la apariencia de conducta impropia o conflicto de intereses puede tener un efecto tan dañino sobre la imagen, confianza y respeto del público por su gobierno, como la verdadera impropiedad ética. Así lo confirman las expresiones siguientes:

" '[T]here is a tendency to think of appearances as merely prudential, as a tool of public relations, rather than as having any ethical significance themselves.' [nota al calce omitida] This tendency may obscure the significance of appearances in the public realm. '[I]n the more impersonal world of politics, reality and appearance blend together so that we cannot often tell the difference.' [nota al calce omitida] That is, the public can judge the effectiveness of government only by reference to what it sees. It often has no way to look beyond the appearance to judge the reality. For this reason, the appearance of loyal, conflict-free government is important." (Escolio omitido.) B. Nolan, *Public Interest, Private Income: Conflicts and Control Li-*

*mits on the Outside Income of Goverment Officials*, 87 Nw. U.L. Rev. 57, 77–78 (1992).

Esta preocupación por disipar o contrarrestar incluso la impresión o imagen de conflicto de intereses y conducta impropia, se desprende también del historial legislativo de la Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1802 *et seq.*), legislación aprobada para enmendar la Ley Núm. 12, *supra*, ampliando las prohibiciones contenidas en el código de ética y promoviendo aún más la integridad de los funcionarios y empleados públicos.[5]

A tales efectos, en el Informe de la Comisión de Ética Gubernamental del Senado de Puerto Rico sobre el P. del S. 50 de 23 de junio de 1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria, se expresó:

> El P. del S. 50 tiene el propósito de ampliar el alcance de varias disposiciones de la Ley Núm. 12 de 24 de julio de 1985, según enmendada, conocida como la "Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico". Con esta medida se persigue fortalecer el compromiso de responsabilidad moral y ética que debe regir la conducta de los funcionarios y empleados públicos.
>
> ... La aplicación e interpretación de las disposiciones de la Ley de Etica Gubernamental han llevado a plantear la necesidad imperiosa de adoptar e incorporar enmiendas dirigidas a disipar cualquier *asomo* de desconfianza de nuestro pueblo en las actuaciones de sus servidores públicos. ...
>
> En la ponencia presentada por la Contralor de Puerto Rico se expresa lo siguiente:
>
> "Endosamos el Proyecto. *Es importante reconocer que hay muchas acciones que son legales, pero ello no quiere decir que son aceptables desde el punto de vista moral. Por eso es que los códigos de ética de las distintas profesiones normalmente prohíben los conflictos de intereses reales y aparentes.* Tal norma, basada en principios de moralidad, es aplicable también al Gobierno. La Orden Ejecutiva del 25 de junio de 1968, Boletín Administrativo Núm. 1381, establece '[q]ue *debe ser preocupación constante de todos en la Administración Pública de Puerto Rico lograr y mantener tanto la apariencia como la realidad de una conducta honesta, justa e imparcial en el descargo de las responsabilidades públicas.*' " (Énfasis suplido.)

---

[5] Véase la exposición de motivos de dicha ley.

## III

Procede determinar, entonces, si lo antes expuesto justifica la descalificación de los peritos anunciados por las partes demandantes recurridas en los casos ante nuestra consideración.

En tales casos, tanto el doctor Gorrín Peralta como el doctor Garayalde Cotroneo, catedráticos en el Recinto de Ciencias Médicas de la Universidad de Puerto Rico, pretenden a su vez servir como peritos médicos de la parte demandante en pleitos por alegada mala práctica de la medicina instados precisamente contra el E.L.A. y sus dependencias. Coincidimos con el Estado en que, a la luz de todo el análisis previamente esbozado, tal situación se encuentra contenida dentro de la prohibición establecida en el Art. 13(C)(1) del Reglamento de Ética Gubernamental antes citado.

Dichos facultativos, al ser servidores públicos,(6) ocupan posiciones que le hacen merecedores de la confianza pública. Ello, a su vez, conlleva el cumplimiento de toda política pública gubernamental y el desempeño de su trabajo con la mayor lealtad y de manera tal que su conducta no se preste a malas interpretaciones que pudieran crear serias dudas en cuanto a la gestión pública o a la existencia de conflicto de intereses. Es decir, no sólo deben ser éticos en sus actuaciones, sino que también tienen la gran responsabilidad de lucir como tal ante nuestra sociedad. El balance de intereses a favor del respeto y la confianza pública así lo requiere.

De permitirse a estos médicos actuar como peritos de las partes demandantes en los pleitos instados, estarían asesorando a personas privadas con intereses litigiosos

---

(6) No existe controversia entre las partes respecto a que a dichos facultativos, como funcionarios o empleados de la Universidad de Puerto Rico, instrumentalidad pública a tenor con la Ley de la Universidad de Puerto Rico, Ley Núm. 1 de 20 de enero de 1966 (18 L.P.R.A. sec. 601 *et seq.*), les aplica la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (en adelante Ley de Ética Gubernamental) y su correspondiente reglamento.

contrarios al Estado o sus dependencias. Situación en la que, por un lado, rinden servicios remunerados al Estado a través de una de sus instrumentalidades y, por otro, pretenden fortalecer con su peritaje, cobrando honorarios para su beneficio personal, la reclamación en contra del propio Estado. No podemos permitir tales circunstancias, ya que obviamente ello propiciaría, cuando menos, el que se proyecte ante el pueblo la imagen de una situación conflictiva, menoscabando el apremiante propósito legislativo de la Ley de Ética Gubernamental. Es inconcebible que la mayoría de este Tribunal no lo entienda así.

De otra parte, sostiene el perito interventor, doctor Gorrín Peralta —y así concluyeron los foros recurridos— que su actuación como perito de las partes demandantes no violaría las disposiciones del Art. 13(C)(1) del Reglamento de Ética Gubernamental, *supra*, ya que su actuación como tal no afectaría ni interferiría con el cumplimiento de sus funciones oficiales como servidor público. Aduce, en síntesis, que tal disposición sólo tuvo el efecto de prohibir actividades incompatibles con el *desempeño inmediato de sus funciones* como servidor público y no otras actividades no relacionadas con sus obligaciones oficiales, aunque éstas puedan confligir con otros intereses del Estado.

No podemos coincidir con dichos planteamientos. Tal interpretación sólo tendría el efecto de diluir el principio y propósito detrás de la Ley de Ética Gubernamental de evitar situaciones conflictivas que tengan el potencial o efecto de socavar la confianza del pueblo en su gobierno y sus instituciones. El hecho de que sus ejecutorias como peritos de las partes demandantes no interfieran con el desempeño inmediato de sus funciones no deja de crear, al menos, la apariencia de conflicto de intereses.

Más aún, no existe base en la Ley de Ética Gubernamental ni en su correspondiente reglamento, sobre la cual sostener la distinción que pretende el perito interventor. Como bien señalan los peticionarios en su comparecencia ante nos, del diseño total del Art. 13 del Reglamento, *supra*, se desprende claramente que éste consigna dentro de

su prohibición actividades que *no atañen directamente a las funciones del servidor público, pero que se encuentran prohibidas en atención al "status" de su cargo.* Ciertamente, como ejemplo de ello cabe mencionar la prohibición contenida en el inciso (C)(4) de dicho artículo, referente a aquellas actividades que "traiga[n] descrédito a la agencia o al Gobierno" (Art. 13(C)(4) del Reglamento de Ética Gubernamental, *supra*), y la clara disposición del inciso (C)(1) que prohíbe al funcionario público cualquier actividad "cuando esté o parezca estar en conflicto sustancial con los intereses de la agencia ejecutiva para la cual trabaja *o con los intereses del Gobierno".* (Énfasis suplido.) Art. 13(C)(4) del Reglamento de Ética Gubernamental, *supra.*

Por último, aduce el interventor que la reglamentación aludida adolece de dificultades constitucionales, ya que ésta no cumple con el escrutinio de racionalidad requerido en los casos de reglamentación socioeconómica. Tampoco le asiste la razón. La reglamentación en controversia en el caso de autos resulta claramente válida bajo el referido escrutinio de racionalidad. Como hemos señalado, tal reglamentación, aprobada dentro de los amplios poderes delegados, pretende evitar la existencia o apariencia de conflicto con los intereses de la dependencia gubernamental para la cual labora el servidor público o con los intereses del Gobierno.

Ello, a su vez, y por las razones esbozadas anteriormente, tiene el efecto de salvaguardar y fomentar el propósito completamente legítimo y razonable de promover y preservar la integridad de los servidores e instituciones del Estado y la confianza del pueblo en su gobierno. En consecuencia, existe un nexo racional entre la reglamentación aludida y los propósitos que se pretenden lograr. Véanse: *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. 405 (1993); *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319 (1987); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983); *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Schweiker v. Wilson*, 450 U.S. 221 (1981); *Minnesota v. Clo-*

*ver Leaf Creamery Co.*, 449 U.S. 456 (1981); *San Antonio School District v. Rodríguez*, 411 U.S. 1 (1973); *Dandridge v. Williams*, 397 U.S. 471 (1970).

## IV

Finalmente, debemos precisar el alcance del Art. 13(C) del Reglamento de Ética Gubernamental, *supra*, para los funcionarios y empleados públicos, contenido en la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1824. Ello, a los fines de determinar si el Art. 3.4(c) incluye dentro de su prohibición la ejecutoria de los servidores públicos aquí recurridos como peritos de las partes demandantes. Veamos.

Con la aprobación de la Ley Núm. 12, *supra*, en lo pertinente, la Legislatura dispuso dentro de las prohibiciones éticas dirigidas a los servidores públicos, ciertas actividades relacionadas con la representación de intereses privados conflictivos con sus funciones oficiales. A tales efectos, el Art. 3.4(c), 3 L.P.R.A. sec. 1824(c), dispuso expresamente que "[n]ingún funcionario o empleado público [podría] representar o de cualquier otra manera asesorar, directa o indirectamente, a persona privada alguna ante cualquier *agencia ejecutiva* a cambio de compensación o beneficio económico, en *casos o asuntos* relacionados con el Gobierno de Puerto Rico ni en casos o asuntos que envuelvan conflictos de intereses o de política pública entre el Gobierno y los intereses de dicha persona privada".

Como podrá notarse, originalmente el texto del artículo aludido contenía dentro de su prohibición únicamente el asesoramiento o representación de personas privadas por parte de los servidores públicos ante *agencias ejecutivas*, mas no así el asesoramiento o representación ante los tribunales de justicia. No obstante, con la aprobación de las enmiendas contenidas en la Ley Núm. 150, *supra*, legislación que como indicáramos antes tuvo el propósito de ampliar el alcance de las prohibiciones contenidas en el código de ética, el legislador hizo extensiva tal prohibición a casos

ante los tribunales.([7]) De esta manera se concretó la intención legislativa de promover aún más la integridad de los funcionarios y empleados públicos.

Específicamente, con la aprobación de dicha enmienda, el Art. 3.4(c), *supra*, dispone de la manera siguiente:

> (c) Ningún funcionario o empleado público podrá representar o de cualquier otra manera asesorar, directa o indirectamente, a persona privada alguna ante cualquier agencia ejecutiva, *tribunal* u otra dependencia gubernamental, en *casos y asuntos* relacionados con el Gobierno de Puerto Rico, ni en *casos y asuntos* que envuelvan conflictos de intereses o política pública entre el Gobierno y los intereses de dicha persona privada.

Podrá observarse, además, que con la aprobación de dicha enmienda se clarificó el alcance de los conceptos "casos" y "asuntos", sustituyendo la conjunción "o" que seguía a la palabra "casos" por la conjunción "y". Ahora bien, el inciso (e) del Art. 3.4, *supra*, define expresamente el concepto "asunto" al disponer lo siguiente:

> (e) Para los fines de esta sección y de la sec. 1828 de este título el término *"asunto"* significa aquellos en que el funcionario o empleado *haya participado personal y sustancialmente y que ocurrieron mediante decisión, aprobación o desaprobación, recomendación o consejo, o investigación particular que involucre partes específicas.* No incluye la intervención o participación del funcionario o empleado en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o casos específicos. (Énfasis suplido.)

---

([7]) Adviértase, que dicha enmienda tuvo lugar estando ante nos los casos de epígrafe y una vez presentados los correspondientes alegatos. En vista de ello, el 16 de febrero de 1995 la parte peticionaria presentó ante este Tribunal una moción informativa alegando que con la aprobación de tal enmienda —y habida cuenta de que los peritos en los casos de autos no habían prestado sus declaraciones como peritos en los casos en que se había solicitado su descalificación— resultaba evidente que las actuaciones pretendidas por éstos se encontraban proscritas por las disposiciones del Art. 3.4(c), 3 L.P.R.A. sec. 1824(c).

En consecuencia, el 17 de marzo de 1995 emitimos una resolución para conceder un término a la parte recurrida para mostrar causa por la cual, en vista de que los peritos Dr. José Gorrín Peralta y Dr. Glen Garayalde Cotroneo aún no habían declarado, y tomando en consideración la Ley Núm. 150 de 22 de diciembre de 1994 (3 L.P.R.A. sec. 1802 *et seq.*), no debíamos ordenar su descalificación.

Al amparo de tal definición, pretende sostener su contención el interventor recurrido, doctor Gorrín Peralta. A esos efectos aduce que la palabra "casos" debe estar comprendida dentro del significado del término "asunto". Planteamiento que lo lleva a concluir que no habiendo participado personalmente en los hechos del caso, y en vista de que dentro de sus funciones no se encuentra la intervención en la promulgación de la política pública establecida por el Departamento de Salud o sus instituciones, no le aplica las disposiciones contenidas en el aludido Art. 3.4(c). El procurar la protección de los intereses públicos tras la Ley de Ética Gubernamental nos impide avalar tal interpretación.

Sobre el particular, la Comisión de Ética Gubernamental, al analizar las enmiendas contenidas en la Ley Núm. 150, *supra*, sostuvo lo siguiente en su Informe de 23 de junio de 1993 presentado al Senado:

> También se enmienda el Inciso (c) para sustituir la "o" que le sigue la palabra casos por una "y". *Actualmente* [lógicamente al momento de rendir el Informe; es decir, antes de la aprobación de la enmienda] *se puede interpretar que las palabras casos y asuntos tienen el mismo significado. La palabra asuntos está definida en el propio Artículo 3.4* y comprende aquellos en que el funcionario o empleado público haya participado personal y sustancialmente, pero excluyendo la intervención en la promulgación de normas o reglamentos de aplicación general .... (Énfasis suplido.) Informe de la Comisión de Ética Gubernamental del Senado de Puerto Rico sobre el P. del S. 50 de 23 de junio de 1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria, pág. 21.

La lectura de las expresiones vertidas, a todas luces indica que la intención legislativa al aprobar la enmienda aludida fue dejar claramente establecido que los términos "casos" y "asuntos" no pueden considerarse sinónimos. Se puede colegir claramente que la palabra "asunto" está definida en el propio Art. 3.4, *supra*, mas no así el término "casos". Interpretar lo contrario tornaría la enmienda aprobada en una actuación completamente fútil. Más aún, le asiste la razón a la parte peticionaria al sostener que si

la postura de los recurridos fuese la correcta, hubiese resultado sencillo al legislador el disponer ambos conceptos dentro de la definición contenida en el inciso (e) del Art. 3.4, *supra*.

A la luz de lo antes expuesto, resulta ineludible concluir, y así lo interpretamos, que lo que gramaticalmente quiso decir la Legislatura al disponer "casos y asuntos" fue incluir dentro de la prohibición del Art. 3.4(c), *supra*, tanto el concepto "asunto", según definido por la propia ley, como el concepto "casos" en su acepción general de aquellas controversias relacionadas con el Gobierno o que impliquen conflictos de intereses o política pública entre el Gobierno y los intereses de dicha persona privada, sometidas ante un tribunal, agencia ejecutiva u otra dependencia gubernamental, independientemente de que el servidor público haya estado previamente involucrado o no con la controversia.

Tal interpretación es la única con miras a lograr un resultado que represente plenamente el propósito tras la aprobación de la Ley de Ética Gubernamental. Como señaláramos antes, en casos como los de autos, estos servidores públicos estarían asesorando a personas privadas con intereses litigiosos contrarios al Estado o sus dependencias. Lo cual, a fin de cuentas, presentaría un conflicto de intereses o política pública entre el Gobierno y los intereses de dicha persona privada, independientemente de que el servidor público haya tenido contacto previo con los hechos del caso.

Debemos añadir que el interventor, doctor Gorrín Peralta, argumenta que el decretar su descalificación como testigo pericial al amparo del artículo en controversia, tendría el efecto de violar la garantía constitucional contra el menoscabo de las obligaciones contractuales. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1.[8] La falla de dicho argumento consiste en que no toma en consideración que en los casos de autos las relaciones contractuales entre las partes

---

[8] Dicha sección dispone:

"No se aprobarán leyes que menoscaben las obligaciones contractuales." Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 275.

comenzaron con posterioridad a la vigencia del *Reglamento de Ética Gubernamental, el cual según sostuvimos antes, en su Art. 13(C)(1),* supra, *proscribe los servicios que éstos pretenden prestar.*

De otra parte, hemos resuelto que "por razones superiores de orden público [la protección contra el menoscabo de las obligaciones contractuales] ... puede quedar subordinada al poder de reglamentación .... Al considerar la validez de estatutos bajo la cláusula de menoscabo el criterio aplicable es el de razonabilidad[, y l]a razonabilidad del estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva". *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 395–396 (1973).(⁹)

En síntesis, sostenemos, contrario a la mayoría, que el referido Art. 3.4(c), *supra,* debe ser interpretado a los fines de disponer que ningún funcionario o empleado público podrá representar o de cualquier otra manera asesorar, directa o indirectamente, a persona privada alguna ante cualquier agencia ejecutiva, tribunal u otra dependencia gubernamental: (a) en aquellos "asuntos" particulares, según definidos por el propio Art. 3.4(e), *supra,* relacionados con el Gobierno de Puerto Rico o que impliquen conflictos de intereses o política pública entre el Gobierno y los intereses de dicha persona privada, ni *(b)* en aquellos "casos", en su acepción general, relacionados con el Gobierno de Puerto Rico o que impliquen conflictos de intereses o política pública entre el Gobierno y los intereses de dicha persona privada, independientemente de que el servidor público haya estado involucrado previamente con la controversia involucrada en el caso.

No obstante, tomando en consideración que el Art. 3.8 de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1828, dispone que toda persona que viole intencionalmente las

---

(⁹) Véase, además, *Bayrón Toro v. Serra,* 119 D.P.R. 605 (1987), y casos allí citados.

disposiciones y prohibiciones del Art. 3.4, *supra*, incurrirá en delito grave, dispondríamos que la aplicación de tal precepto de carácter penal a la interpretación que hemos propuesto del referido Art. 3.4(c) fuera de carácter prospectivo.

## V

Por todos los fundamentos expuestos anteriormente, ordenaríamos la descalificación de los peritos anunciados por las partes demandantes en los casos de epígrafe, evitando de esta manera que su participación como tal pueda provocar, o parecer que provoca, un conflicto con los intereses del Estado o de la dependencia gubernamental en la cual se desempeñan como servidores públicos. Al así concluir, evitaríamos que puedan incurrir en violación a las disposiciones del Art. 13(C)(1) del Reglamento de Ética Gubernamental, *supra*, o a las disposiciones del Art. 3.4(c) de la Ley de Ética Gubernamental, *supra*.

Por consiguiente, revocaríamos las resoluciones recurridas y en su lugar ordenaríamos la descalificación de los Drs. José Gorrín Peralta y Glen Garayalde Cotroneo como peritos de las partes demandantes recurridas. Por no hacerlo así este Tribunal, ello en perjuicio de los mejores intereses públicos, disentimos.